**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Ivan L. Miller,<br><br>        Plaintiff,<br><br>v.<br><br>Kilolo Kijakazi, Acting Commissioner of the Social Security Administration,[1]<br><br>        Defendant. | No. CV-20-1725-PHX-MTL<br><br>**ORDER** |

      Plaintiff Ivan L. Miller challenges the denial of his Application for Supplemental Security Income under the Social Security Act ("the Act") by Defendant, the Commissioner of the Social Security Administration ("Commissioner" or "Defendant"). Plaintiff filed a Complaint (Doc. 1) with this Court seeking judicial review of that denial, and the Court now addresses Plaintiff's Opening Brief (Doc. 19, Pl. Br.), Defendant's Response Brief (Doc. 28, Def. Br.), and Plaintiff's Reply. (Doc. 29, Reply.) The Court has reviewed the briefs and Administrative Record. (Doc. 18, AR.) The Court reverses the Administrative Law Judge's ("ALJ") decision and remands for further proceedings consistent with this opinion.

\\\

---

[1] The Court acknowledges that, as stated in Defendant's Response Brief, Kilolo Kijakazi became acting Commissioner of the Social Security Administration on July 9, 2021 and, pursuant to Fed. R. Civ. P. 25(d), is an automatically substituted party.

## I. BACKGROUND

Plaintiff filed an application for Supplemental Security Income on March 2, 2017, for a period of disability benefits beginning on December 1, 2014, his alleged onset date. (AR. 179–87.) After a hearing on August 6, 2019, the ALJ issued a written decision denying Plaintiff's claim on October 8, 2019. (AR. at 21–37.) The Social Security Appeals Council upheld the ALJ's denial in a letter dated July 9, 2020 (AR. at 1–5), and Plaintiff sought judicial review on September 2, 2020. (Doc. 1.)

The Court has reviewed the medical evidence in its entirety. The pertinent medical evidence will be discussed in addressing the issues raised by the parties. The ALJ evaluated Plaintiff's disability from the date of Plaintiff's application through the date of the decision based on schizoaffective and bipolar disorder. (AR. at 23.) The ALJ found Plaintiff has no physical limitations but is "limited to simple work with occasional social interaction." (AR. at 26.) Based on the vocational expert's ("VE") testimony, the ALJ concluded Plaintiff could perform several unskilled jobs. (AR. at 31–32.)

## II. LEGAL STANDARD

In determining whether to reverse an ALJ's decision, the district court reviews only those issues raised by the party challenging the decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). The Court may set aside the Commissioner's disability determination only if the determination is not supported by substantial evidence or is based on legal error. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is relevant evidence that a reasonable person might accept as adequate to support a conclusion considering the record as a whole. *Id.* To determine whether substantial evidence supports a decision, the Court must consider the record as a whole. *Id.* Generally, "[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (citations omitted).

To determine whether a claimant is disabled for purposes of the Act, the ALJ follows a five-step process. 20 C.F.R. § 416.920(a)(4). The claimant bears the burden of

proof at the first four steps, but the burden shifts to the Commissioner at step five. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). At the first step, the ALJ determines whether the claimant is presently engaging in substantial gainful activity. 20 C.F.R. § 416.920(a)(4)(i). At step two, the ALJ determines whether the claimant has a "severe" medically determinable physical or mental impairment. 20 C.F.R. § 416.920(a)(4)(ii). At step three, the ALJ considers whether the claimant's impairment or combination of impairments meets or medically equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Part 404. 20 C.F.R. § 406.920(a)(4)(iii). If so, the claimant is disabled. *Id.* If not, the analysis proceeds to step four, where the ALJ assesses the claimant's RFC and determines whether the claimant is still capable of performing past relevant work. 20 C.F.R. § 416.920(a)(4)(iv). If the claimant can do his past relevant work, he is not disabled. *Id*. If not, the analysis proceeds to the fifth and final step, where the ALJ determines if the claimant can perform any other work in the national economy based on the claimant's residual function capacity ("RFC"), age, education, and work experience. 20 C.F.R. § 416.920(a)(4)(v). If not, the claimant is disabled. *Id.*

### III.    ANALYSIS

Plaintiff raises one issue for this Court's consideration: whether the Commissioner failed to provide "clear and convincing reasons supported with substantial evidence for not including the limitations assessed by the examining and reviewing doctors in the RFC finding[.]"[2] (Pl. Br. at 1.) Since resolving this issue requires consideration of the ALJ's treatment of the opinion evidence, the Court will address each medical opinion cited by Plaintiff, in turn. The Court holds (1) the ALJ provided legally sufficient reasons for rejecting the opinion of the examining psychologist, Dr. An Nguyen; (2) the ALJ did not provide legally sufficient reasons for rejecting the opinion of the consultative examiner, Dr. Maryann Latus; and (3) the ALJ erred by finding Plaintiff could perform jobs with a

---

[2] In his Complaint, Plaintiff reserved as error the Appeals Council's failure to consider the supplemental statement of the examining psychologist, Dr. An Nguyen. (Doc. 1.) Plaintiff did not substantively brief the matter, so the Court does not consider it. *Carmickle v. Comm'r, Social Sec. Admin.*, 533 F.3d 1155, 1161 n.3 (9th Cir. 2008) (internal citations omitted).

General Educational Development ("GED") level of 2.

While "[t]he ALJ must consider all medical opinion evidence," there is a hierarchy among the sources of medical opinions. *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008).[3] Those who have treated a claimant are treating physicians, those who examined but did not treat the claimant are examining physicians, and those who neither examined nor treated the claimant are nonexamining physicians. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). An ALJ "may only reject a treating or examining physician's uncontradicted medical opinion based on 'clear and convincing reasons.'" *Carmickle*, 533 F.3d at 1164 (internal citations omitted). "Where such an opinion is contradicted, however, it may be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." *Id.* (internal quotations and citations omitted). Under Social Security regulations, a provider who examines a claimant outside the course of treatment and at the behest of an attorney is not a treating source. 20 C.F.R. § 416.927(a)(2) ("We will not consider an acceptable medical source to be your treating source if your relationship with the source is not based on your medical need for treatment or evaluation, but solely on your need to obtain a report in support of your claim for disability. In such a case, we will consider the acceptable medical source to be a nontreating source.").

It is the province of the ALJ to resolve conflicts and ambiguities in the record, and to "interpret[] terms and phrases used by physicians in their opinions." *Frigon v. Acting Comm'r of Soc. Sec. Admin.*, 2019 WL 2912498, at *4 (D. Ariz. July 8, 2019) (citing *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995)); *see Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005) ("The hypothetical that the ALJ posed to the VE contained all of the limitations that the ALJ found credible and supported by substantial evidence in the record.").

To begin, the Court considers the opinion evidence under the specific, legitimate standard, as each opinion is contradicted in the record by the others. *Carmickle*, 533 F.3d

---

[3] Plaintiff filed this Title XVI claim on March 2, 2017—25 days before the effective date of new regulations pertaining to the evaluation of opinion evidence. 20 C.F.R. § 416.920c. As such, the previous regulatory scheme delineated in 20 C.F.R. § 416.927 applies.

at 1164 (internal citations omitted). The opinions of the consultative examiner, Maryann Latus, Ph.D. and the non-examining psychiatrist, J. Zuess, M.D., are in conflict. (AR. at 94–98.)[4] Examining psychologist An Nguyen, Psy.D. assigned to Plaintiff far more restrictive limitations than Drs. Latus and Zuess. (AR. at 704-705.) Consequently, the Court evaluates whether the ALJ provided specific, legitimate reasons supported by substantial evidence for rejecting these opinions or aspects of them.

### A.   Dr. An Nguyen

On July 24, 2017, examining psychologist An Nguyen, Psy.D., interviewed and examined Plaintiff at the behest of his attorney. (AR. at 694-706.) Psychometrist Megan Wiley, M.A., administered testing for the evaluation. (AR. at 696, 699-701.) While Plaintiff's psychometric scores indicated significant impairment, Dr. Nguyen concluded they "are not considered a valid representation of [Plaintiff's] level of cognitive functioning." (AR. at 702.) Dr. Nguyen noted Plaintiff's performance on a specific subtest was "suggestive of poor effort." (AR. at 699.) She further noted Plaintiff's ability to "recall specific detailed examples of and history information [*sic*]" is inconsistent with his "extremely low" memory scores. (AR. at 702.) In a related Substance Abuse Questionnaire, she indicated Plaintiff's substance abuse was in remission, and that he would continue to suffer from impairment in the absence of substance abuse. (AR. at 703.) As support, she generally cited Plaintiff's medical records from the Southwest Network dated October 26, 2016 to May 20, 2019. (AR. at 703.)

In her RFC, Dr. Nguyen indicated Plaintiff suffered from moderately-severe limitations (defined as having "noticeable difficulty" or distraction from job activity more than 20% of the workday or work week) in ten different functional areas including the ability to maintain attention and concentration for extended periods; perform activities within a schedule; maintain regular attendance; be punctual within customary tolerances;

---

[4] Dr. Zuess, for instance, limited Plaintiff to "1-to-2-step tasks on a sustained basis" (AR. at 96), but Dr. Latus found Plaintiff could understand and remember "detailed instructions" and even carry them out under certain circumstances. (AR. at 431.) Dr. Zuess commented Dr. Latus's opinion "[m]ay be under-limiting" compared to his own psychiatric review technique and mental RFC. (AR. at 94.)

sustain an ordinary routine without special supervision; work in coordination with, or proximity to, others without being distracted; respond to customary work pressures; and get along with coworkers or peers without distracting them or exhibiting behavioral extremes. (AR. at 704–705.) In a narrative summary at the end of her report, Dr. Nguyen stated Plaintiff's limitations in carrying out detailed instructions, sustaining concentration, performing activities within a schedule, working in coordination with others, sustaining an ordinary routine without special supervision, completing a normal workday at a consistent pace, responding to supervisory criticism, and responding appropriately to work setting changes are "[s]econdary to [Plaintiff's] hallucinations and mood symptoms." (AR. at 706.)

In the unfavorable decision, the ALJ assigned "little weight" to Dr. Nguyen's opinion. (AR. at 30.) The ALJ explained the opinion was "not supported by the evidence as a whole including [Dr. Nguyen's] own observations." (AR. at 30.) The ALJ specifically noted that Dr. Nguyen's observation that Plaintiff's medications were "having a therapeutic effect on his reported symptoms" was "inconsistent with her extreme limitations," and that she invalidated Plaintiff's psychometric testing scores due to inconsistencies. (AR. at 30.) Finally, the ALJ noted Dr. Nguyen cited Plaintiff's Southwest Behavioral records generally in support, but "failed to make any specific references." (AR. at 30.)

Plaintiff argues "Dr. Nguyen's assessment is consistent with her own observations and with the record as a whole," including the opinions of Drs. Latus and Zuess, and Plaintiff's designation for Seriously Mentally Ill ("SMI") status by an outside provider. (Pl. Br. at 10.) Plaintiff notes that "[e]very other clinician in the record who examined [Plaintiff] has also opined that his most serious limitations would be in understanding and carrying out detailed instructions and in maintaining appropriate social functioning in the work setting." (Pl. Br. at 10.) Plaintiff asserts that while Dr. Nguyen indicated Plaintiff's symptoms were managed with his medication, she further stated "[Plaintiff] could be expected to experience increasing difficulty controlling his symptoms as changes took place or as stresses were introduced to his life." (Pl. Br. at 10.) Plaintiff quoted Dr.

Nguyen's report, stating that, "[A]s things become more unpredictable or as stressors of daily life increase [Plaintiff] may have difficulty managing symptoms. A situation that would be considered unpredictable is a work environment as it would more than likely involve interacting with other people that are typically strangers, and managing stressful situations that may arise." (Pl. Br. at 11.) Plaintiff concedes Dr. Nguyen invalidated the psychometric testing scores but notes that Dr. Nguyen explained the limitations she assigned "were based on [Plaintiff's] hallucinations and mood symptoms." (Pl. Br. at 11.) Finally, while Dr. Nguyen observed Plaintiff was "friendly and cooperative" during the exam, Plaintiff asserts this is not inconsistent with Dr. Nguyen's report, as she "noted [Plaintiff's] multiple hospitalizations in the past because psychiatric symptoms caused [him] to exhibit aggressive behavior towards family members and others[,]" and that his ability to cooperate during an examination "is not equivalent to the ability to sustain appropriate social interaction" for an entire workday. (Pl. Br. at 11.)

Defendant argues the ALJ listed several permissible reasons for rejecting Dr. Nguyen's report and otherwise "properly evaluated the evidence of record." (D. Br. at 18.) Defendant asserts the ALJ's decision is supported by substantial evidence. (D. Br. at 18.) Defendant argues Plaintiff cherry-picked the record, and that it is the province of the ALJ to select an RFC supported by the record. (D. Br. at 19–21.)

The ALJ provided sufficient specific and legitimate reasons here for rejecting Dr. Nguyen's opinion. First, the ALJ noted inconsistencies between Dr. Nguyen's observations and conclusions. (AR. at 30.) The ALJ specifically cited the doctor's conclusion Plaintiff's medications had a "therapeutic effect" on his symptoms, but still assigned "extreme limitations." (AR. at 30); *see Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006) ("Impairments that can be controlled effectively with medication are not disabling for the purpose of determining eligibility for SSI benefits."); *Bayliss*, 427 F.3d at 1216 (holding that discrepancies between a doctor's assessment and his clinical notes and observations constitute a clear, convincing reason to reject that doctor's opinion); *Pennock v. Comm'r of Soc. Sec. Admin.*, 2020 WL 6796768, at *5 (D. Ariz. Nov. 19, 2020) ("[I]t

was permissible for the ALJ to focus on the lack of consistency and supportability of [the doctor's] opinion with the [the doctor's] own examination notes and the entire medical record.") (citing *Bayliss*, 427 F.3d at 1216).

Plaintiff argues there is no inconsistency based on Dr. Nguyen's statement that "as things become more unpredictable or as stressors of daily life increase [Plaintiff] may have difficulty managing his symptoms," (Pl. Br. at 11), but the notion Plaintiff's symptoms *may* worsen under certain circumstances is tentative, speculative, conclusory, and without support in this record. *See Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001) ("When confronted with conflicting medical opinions, an ALJ need not accept a treating physician's opinion that is conclusory and brief and unsupported by clinical findings.") (internal citations omitted); *accord Dumble v. Astrue*, 2011 WL 4502086, at *3 (C.D. Cal. Sept. 28, 2011) (characterizing an examining physician's conclusions a claimant "might have" certain limitations in a work environment as speculative and not amounting to "significant probative evidence that the ALJ would be required to discuss" considering the doctor's opinion was based on claimant's current condition which was expected to improve) (internal quotation marks and citations omitted). Moreover, and contrary to Plaintiff's brief, Dr. Nguyen never stated that Plaintiff "*could be expected* to experience increasing difficulty controlling his symptoms as changes took place or as stresses were introduced to his life." (Pl. Br. at 10) (emphasis added). Rather, Dr. Nguyen suggested Plaintiff "*may have* difficulty managing his symptoms" under those circumstances. (AR. at 701) (emphasis added). While it is generally recognized that the increased stresses of a work environment may exacerbate mental health symptoms, *see Garrison v. Colvin*, 759 F.3d 995, 1017–18 (9th Cir. 2014), Dr. Nguyen's statement is not enough to show that Plaintiff is unfit for work.

Furthermore, the ALJ appropriately noted the lack of support from Dr. Nguyen's own documented clinical observations. (AR. at 30.) Dr. Nguyen reported that Plaintiff presented as euthymic, with no speech or word-finding difficulties, an "appropriate or congruent" affect, "logical and goal directed" thought-processes, an "okay" mood, and no

observed or reported "perceptual disturbances." (AR. at 698.) She described Plaintiff's demeanor as "calm, friendly, and compliant." (AR. at 699.) Plaintiff argues his ability to "cooperate with a one-time psychiatric examination lasting 2.5 hours is not equivalent to an ability to sustain appropriate social interaction for 8 hours per day, 5 days per week." (Pl. Br. at 11.) But Plaintiff cannot submit Dr. Nguyen's report as proof of disability, and then contend that said report is not credible or reliable when its findings are inconsistent with his argument. And, the Court's review of the record reveals that Plaintiff's medical records from Southwest Network are generally inconsistent with the presence of a disabling mental impairment.[5]

The ALJ also noted Dr. Nguyen "failed to make any specific references" to the medical records that supported the limitations she assigned, although she cited to Plaintiff's medical records over a two-and-a-half-year period. (AR. at 30.) A physician's failure to provide adequate support may be a specific, legitimate reason for rejecting that opinion. *See* 20 C.F.R. § 416.927(c)(3) ("The more a medical source presents relevant evidence to support a medical opinion . . . the more weight we will give that medical opinion. The better an explanation a source provides for a medical opinion, the more weight we will give that medical opinion."); 20 C.F.R. § 416.927(c)(4) ("Generally, the more consistent a medical opinion is with the record as a whole, the more weight we will give to that medical opinion.") The Court recognizes, however, that the medical records cited by Dr. Nguyen were only offered in support of her conclusion Plaintiff suffers a severe mental health impairment in the absence of drug or alcohol use (AR. at 703), which is a separate issue.

---

[5] The Southwest Network records state: Plaintiff's doctor will not write a letter to support Plaintiff's disability claim because Plaintiff said he could work. (AR. at 550.) Plaintiff does not want to get a job because it might jeopardize his disability application. (AR. at 632, 635.) Plaintiff's medications are working well without side effects. (*E.g.*, AR. at 551, 575, 581, 594–95.) Plaintiff reported he was doing well. (AR. at 542, 544, 551, 554, 557, 562, 570, 571, 573-74, 581, 583.) Plaintiff reported he was experiencing no symptoms. (AR. at 551, 562. 571, 573, 581, 583, 594–95.) Plaintiff can control auditory hallucinations which do not interfere with his functioning. (AR. at 614.) Medications help with "occasional" auditory hallucinations. (AR. at 637.) Providers assessed Plaintiff as "stable," or Plaintiff reported feeling stable. (AR. at 651, 663.)

As such, this is not a specific, legitimate reason to reject Dr. Nguyen's report. As explained above, however, the ALJ did provide other specific, legitimate reasons supported by substantial evidence, including internal inconsistencies. The argument that Dr. Nguyen opined Plaintiff's symptoms may worsen in a work setting is unpersuasive under these circumstances. The Court affirms the ALJ's rejection of the Dr. Nguyen report.

### B.     Dr. Maryann Latus

Consultative psychologist Maryann Latus, Ph.D. conducted an interview and examination of Plaintiff on July 12, 2016, at the behest of Phoenix Disability Determination Services. (AR. at 426–32.) She documented Plaintiff's treatment history, daily activities, other background information, and his reported mental health symptoms. (AR. at 427–30.) She diagnosed Plaintiff with Bipolar Disorder I, "current or most recent episode unspecified." (AR. at 430.) She concluded Plaintiff had the ability to understand, remember, and carry-out simple and detailed instructions; remember work-like procedures; maintain attention and concentration for extended periods; get along with coworkers; maintain socially appropriate behavior; interact appropriately with the public; and respond appropriately to changes in the work setting. (AR. at 431.) Dr. Latus elaborated that Plaintiff could carry out detailed instructions "if explained to him first and then carried out with supervision prior to letting him do it alone"; that Plaintiff could maintain attention and concentration for extended periods "if he has ample time to perform the task"; that he could get along with coworkers "if he feels that he is in a supportive work environment"; and that he could interact appropriately with the public "if he feels that he is safe." (AR. at 431.)

In the unfavorable decision, the ALJ assigned "some weight" to Dr. Latus's opinion "as it is generally consistent with the record," and "great weight" to her conclusion Plaintiff could perform "simple work," but only "little weight" to the conclusion Plaintiff "requires explanations, additional supervision, and a supportive work environment." (AR. at 29.) The ALJ explained that, regarding those specific limitations, "[T]here is no objective evidence in the record to support [Dr. Latus's] opinion that the claimant requires

explanations, additional supervision, and a supportive work environment." (AR. at 29.) The ALJ continued, "These limitations appear to be based on the claimant's subjective statements and not the record." (AR. at 29.)

The ALJ relies on conclusory assertions to partially discredit Dr. Latus's opinion. As such, the ALJ's rationale fails to satisfy the specific and legitimate standard. *See Magallanes v. Bowen,* 881 F.2d 747, 751 (9th Cir. 1989) ("[t]he ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings"); *see also Padilla v. Comm'r. of Soc. Sec.*, 2018 WL 4770807 at *6 (D. Ariz. Oct. 3, 2018) ("The ALJ did not satisfy this burden in concluding, without explanation, that [the treating doctor's opinions] lacked support in the objective medical evidence and treatment record. Even if the record includes limited objective evidence and treatment evidence, the ALJ still failed to connect that evidence, or lack of evidence, to her rejection of any particular limitation that [the treating physician] identified . . . .") (internal citations omitted). The ALJ's conclusory and general assertion that "there is no objective evidence in the record to support [Dr. Latus's] opinion" does not constitute a legally sufficient reason for rejecting aspects of Dr. Latus's opinion.

Regarding the ALJ's belief Dr. Latus's qualified limitations "appear to be based on [Plaintiff's] subjective statements and not the record," precedent from this Circuit is instructive. In *Buck v. Berryhill*, the Ninth Circuit noted that psychiatric diagnoses "will always depend in part on the patient's self-report . . . [b]ut such is the nature of psychiatry . . . Thus, the rule allowing an ALJ to reject opinions based on self-reports does not apply in the same manner to opinions regarding mental illness." 869 F.3d 1040, 1049 (9th Cir. 2017) (internal citations omitted). A clinical interview and mental status examination do not constitute subjective "self-report," but are "objective measures" regarding mental illness. *Id.* Consequently, it is insufficient to summarily disregard the examining psychologist's conclusions merely because they "appear to be based on [Plaintiff's] subjective statements and not the record." (AR. at 29.)

Importantly, although the ALJ failed to provide legally sufficient reasons for rejecting aspects of Dr. Latus's opinion, the record has not established the limitations Dr. Latus assigned are disabling.[6] Plaintiff's counsel had an opportunity to address the vocational expert on this specific point and did not. (AR. at 66.) There was no inquiry at the hearing as to whether the qualified limitations Dr. Latus assigned would bring Plaintiff within the domain of accommodated work, which would result in a finding of disabled, as Plaintiff argues.[7] (AR. at 66–67.) Consequently, and as explained in further detail below, the Court will remand for additional proceedings.

### C.   Dr. J. Zuess

On August 22, 2017, non-examining psychiatrist J. Zuess, M.D., completed an evaluation of Plaintiff's medical records for the Disability Determination Services at the reconsideration level of review. (AR. at 91-98.) Dr. Zuess concluded Plaintiff suffered from severe mental health impairments in the categories of Depressive, Bipolar and Related Disorders and Schizophrenia Spectrum and Other Psychotic Disorders. (AR. at 92.) This conclusion differed from the opinion of the previous non-examining consultant who had found Plaintiff's mental impairments non-severe during the initial administrative review. (AR. at 78–79, 92–93.)

Despite his conclusion Plaintiff suffered a severe mental health impairment, Dr. Zuess noted that, generally, Plaintiff's symptoms were improved. (AR. at 93.) Plaintiff's

---

[6] *Estrella v. Colvin*, F.Supp.3d 1090, 1105 (D. Ariz. 2016) (discussing the parameters of sheltered work) (internal citations omitted.)
[7] The Court acknowledges Plaintiff's counsel may have waived the issue of whether the limitations Dr. Latus assigned amount to sheltered or accommodated work. When represented by counsel, "appellants must raise issues at their administrative hearings in order to preserve them on appeal before [the Court.]" *Meanel v. Apfel*, 172 F.3d 1111, 1115 (9th Cir. 1999) (as amended). It seems Plaintiff's position that the qualified limitations described by Dr. Latus amount to accommodated work does not raise a question of law, but one of fact best directed to the vocational expert. *Silveira v. Apfel*, 204 F.3d 1257, 1259 (9th Cir. 2000) (holding, when there is no prejudice to the Commissioner, that issue waiver would not apply to "a pure question of law") (internal citations omitted); *see, e.g.*, *Vizcarra v. Saul*, 883 Fed.App'x. 461, 462 (9th Cir. 2021) (holding appellant waived the issue of conflict between a VE's testimony and certain occupational sources by failing to raise it before the ALJ or Appeals Council). Given that Defendant did not brief the issue of waiver, and thus, Plaintiff had no occasion to respond, the Court finds that manifest injustice would result from the Court's conclusion Plaintiff waived the issue. *Meanel*, 172 F.3d at 1115. Consequently, the Court finds the issue not waived.

history of treatment for Schizoaffective Disorder and a history of "psychotic exacerbations" notwithstanding, Dr. Zuess indicated Plaintiff had been "doing fairly well" since, "with normal to near-normal [mental status exams] and fewer symptoms." (AR. at 93.) He documented that Plaintiff presented with a normal mental status exam during his evaluation with the consultative psychologist, Dr. Latus, and that Dr. Latus questioned Plaintiff's psychotic symptoms and the diagnosis of schizophrenia. (AR. at 93.) Dr. Zuess mentioned Dr. Latus diagnosed Plaintiff with Bipolar Disorder I and "what appears to be a [non-severe medical source statement.]" (AR. at 93.) Dr. Zuess noted that, since the consultative examination, Plaintiff had "done well," with "a normal or only minimally abnormal mental status exam" and "mild depressive symptoms." (AR. at 93.) He also noted Plaintiff's case worker documented there was "no evidence that the [Plaintiff] is unable to work"; that Plaintiff "admits he can work but doesn't want to"; and that while "there is a motivational issue here related to depression," Plaintiff "currently presents with euthymic and appropriate affect, so that is questionable." (AR. at 93.) Dr. Zuess concluded, "Giving the [Plaintiff] the benefit of the doubt, the [Plaintiff] may be limited to sustaining 1 to 2 step tasks. Please see [mental residual functional capacity ("MRFC")]." (AR. at 93.)

      In the MRFC, Dr. Zuess found Plaintiff moderately limited in his ability to maintain attention and concentration for extended periods; perform activities within a schedule; maintain regular attendance; be punctual within customary tolerances; complete a normal workday or work week without interruption from psychological symptoms; and perform at a consistent pace without an unreasonable number or length of rest periods. (AR. at 95.) In the category of "sustained concentration and persistence limitations," Dr. Zuess explained, "Available data suggests the claimant is able to carry out 1-to-2-step instructions, follow simple work-like procedures, maintain attention and concentration doing 1-to-2-step tasks throughout a regular work day and work week, and make simple work-related decisions." (AR. at 95.) Regarding Plaintiff's social interaction limitations, Dr. Zuess opined Plaintiff "has an adequate ability to interact appropriately with the public, co-workers and supervisors." (AR. at 96.) Dr. Zuess found no significant limitation in any other functional

domain. (AR. at 96.) In the "Additional Explanation" section of the report, Dr. Zuess, generally referring to his MRFC, reiterated, "[Plaintiff] is able to perform 1-to-2-step tasks on a sustained basis." (AR. at 96.)

In the decision, the ALJ assigned only "partial weight" to Dr. Zuess's opinion. (AR. at 29.) The ALJ assigned "great weight" to Dr. Zuess's conclusion Plaintiff had a severe mental impairment, but found "the evidence supports greater restriction of the [Plaintiff's] mental functioning"—specifically, Plaintiff's ability to interact with others. (AR. at 29.) The ALJ assigned "[g]reat weight . . . to [Dr. Zuess's] opinion that the [Plaintiff] would be restricted to simple work, as it is supported by the record." (AR. at 29.) In his RFC determination, the ALJ added a limitation to "occasional social interaction." (AR. at 26.) At the hearing, in response to the ALJ's hypothetical limiting an individual to "simple [work] . . . that would involve probably no more than occasional interaction with coworkers, supervisors and the public," the VE identified three unskilled jobs with a GED Reasoning Level of 2. (AR. at 65.)

Plaintiff argues Dr. Zuess's MRFC eliminates the jobs the ALJ identified because a limitation to one-to-two step tasks would bring Plaintiff within the ambit of GED Reasoning Level 1 jobs ("Level 1 Jobs"), but all the jobs the VE identified require a GED Reasoning Level of 2 ("Level 2 Jobs"). (Pl. Br. at 13, AR. at 65.) Level 1 Jobs "[a]pply commonsense understanding to carry out simple one- or two-step instructions. Deal with standardized situations with occasional or no variables in or from these situations encountered on the job." (Pl. Br. at 13.) Level 2 Jobs "[a]pply commonsense understanding to carry out detailed but uninvolved written or oral instructions [and] [d]eal with problems involving a few concrete variables in or from standardized situations." (Pl. Br. at 13.)

Defendant responds the ALJ gave "great weight" to Dr. Zuess's conclusion Plaintiff could perform "simple work," but only "partial weight" to the conclusion Plaintiff could perform one-to-two-step tasks on a sustained basis. (D. Br. at 19.) The Court disagrees with Defendant's interpretation of the ALJ decision and will remand for further proceedings.

General Educational Development levels, or "GED" levels, and Specific Vocational

Preparation levels, or "SVP" levels, are "two separate vocational considerations." *Meissl v. Barnhart*, 403 F. Supp. 2d. 981, 983 (C.D. Cal. 2005). The GED scale stratifies "those aspects of education (formal and informal) which are required of the worker for satisfactory job performance." Dictionary of Occupational Titles, Fourth Edition, Revised, APPENDIX C - COMPONENTS OF THE DEFINITION TRAILER, *available at* 1991 WL 688702. The GED scale "is composed of three divisions: Reasoning Development, Mathematical Development, and Language Development." *Id*. GED levels "gauge[] the minimal ability a worker needs to complete the job's tasks," whereas an SVP code indicates "the amount of lapsed time it takes for a typical worker to learn the job's duties." *Meissl*, 403 F. Supp. 2d. at 983 (citing several cases for the proposition "the SVP level in a DOT listing indicating unskilled work[] does not address whether a job entails only simple, repetitive tasks.") (internal quotations and citations omitted).

The Court recognizes a line of Ninth Circuit cases—none cited by either party—exploring whether conflict in the vocational evidence exists under these and similar circumstances. The issue before the Court is whether, by partially relying upon a medical source who limited Plaintiff to one-to-two step instructions, but not explicitly accepting or rejecting that limitation, and ultimately assigning a broader RFC limitation to "simple work," an ALJ erred by concluding the Plaintiff could perform Level 2 Jobs.

On the one hand, a limitation to work involving only "simple tasks," "simple, repetitive tasks," or "simple, routine, repetitive work," is consistent with the ability to perform Level 2 Jobs. *Zavalin v. Colvin*, 778 F.3d 842, 847 (9th Cir. 2015) (finding a limitation to "simple, routine, or repetitive work" creates a conflict with VE testimony that the individual could perform jobs with GED Reasoning Level of 3); *Abrew v. Astrue,* 303 Fed. App'x. 567, 569–70 (9th Cir. 2008) (finding "there was no conflict between the ALJ's step five determination that Abrew could complete only simple tasks and the vocational expert's testimony that Abrew could do jobs that the [DOT] categorizes as Reasoning Level 2," and emphasizing the DOT definition of GED Reasoning Level 2 as requiring the ability to "carry out detailed but *uninvolved* written or oral instructions.") (internal citations

omitted) (emphasis in original); *Lara v. Astrue*, 305 Fed. App'x. 324, 326 (9th Cir. 2008) (unpublished) (holding an individual "able to perform simple, repetitive tasks is capable of doing work requiring more rigor and sophistication—in other words, Reasoning Level 2 jobs."); *accord Carney v. Astrue*, 2010 WL 5060488, at *4 (C.D. Cal. Dec. 6, 2010) (citing a line of California District Court cases for the proposition "that a limitation to simple, repetitive tasks is consistent with GED Reasoning Level Two.") (internal citations omitted).

In *Rounds v. Comm'r. Social Sec. Admin.*, however, the Ninth Circuit elaborated while directly addressing the issue of whether an individual limited to one-to-two step tasks could perform Level 2 Jobs. 807 F.3d 996, 1003–1004 (9th Cir. 2015). In that case, the ALJ found Plaintiff had an RFC to "perform a full range of work at all exertional levels but with the following nonexertional limitations: she can perform one to two step tasks with no public contact, no teamwork and limited coworker contact." *Id.*, at 1002. The ALJ in *Rounds* found Plaintiff not disabled at step five. *Id.* Relying upon the vocational expert's testimony, that ALJ identified the jobs of kitchen helper, hand packager, and recycler/reclaimer—each classified as Level 2. *Id.* The Court found "an apparent conflict" between the VE's testimony and the DOT, stating that "[o]nly tasks with more than one or two steps would require 'detailed' instructions" as required by Level 2 Jobs. *Id*. The Court then found, as the Plaintiff here appropriately suggests, that a limitation to one-to-two step tasks means the individual is limited to Level 1 Jobs. *Id.* The Court distinguished the facts of *Rounds* from those of *Abrew* and *Lara*, noting that while those prior Courts "concluded 'simple' or 'repetitive' tasks [are] consistent with Level Two reasoning . . . [t]hese decisions are inapposite because *they did not consider a specific limitation to 'one to two step tasks*.'" *Id.* at 1002, n. 6 (emphasis added). *Rounds* is routinely cited by Courts in this Circuit for the proposition that a limitation to one-to-two step tasks precludes an individual from performing Level 2 Jobs. *E.g.*, *April M. v. Saul*, 2020 WL 1062145, at *2–3 (C.D. Cal. Mar. 5, 2020); *Steven J.P. v. Saul*, 2020 WL 208808, at *4–5 (C.D. Cal. Jan. 14, 2020); *Slover v. Comm'r Social Security*, 2018 WL 6460046, at *5–6 (E.D. Cal. Dec. 10, 2018).

Following these cases, the Court sees no apparent conflict between the ability to perform "simple tasks," "simple, repetitive tasks," or "simple, routine, repetitive work," and the ability to perform Level 2 Jobs. Under *Rounds*, however, a more specific limitation to one-to-two step tasks conflicts with the requirements of Level 2 Jobs. In this case, the Court notes that, had the ALJ adopted Dr. Zuess's assigned limitation to one-to-two step tasks, the issue would be clearer. Instead, the ALJ limited Plaintiff to "simple work with occasional social interaction." (AR. at 26.) In so doing, the ALJ assigned "partial weight" to Dr. Zuess's opinion overall, and "great weight" to his opinion Plaintiff was restricted to simple work, "as it is supported by the record." (AR. at 29.) But, Dr. Zuess did not limit Plaintiff to just "simple work": he limited Plaintiff to one-to-two step tasks, "simple work related decisions," and "simple work like procedures." (AR. at 95.) As the cases described above illustrate, there is a meaningful difference between jobs requiring one-to-two step tasks and "simple work"; hence, the ALJ's deviation from the language in Dr. Zuess's opinion without any apparent explanation has created a conflict in the vocational evidence.

In *Little v. Berryhill*, the Court addressed two medical opinions: the opinion of medical source Telford-Tyler—"that [Plaintiff] could 'understand, remember, and carry out simple 1-2 step instructions and work related procedures,'"—and the "less restrictive" opinion of medical source Moran, who limited Plaintiff to "simple directions." 708 Fed. App'x. 468, 469–70 (9th Cir. 2018). The Ninth Circuit characterized the Telford-Tyler and Moran opinions as in conflict. *Id.* The Court asserted, "Here, the ALJ did not explain why he rejected the Telford-Tyler limitation [to 1-2 step instructions] when he assessed that [Plaintiff] had an RFC to perform 'simple work.'" *Id*. at 470. The Ninth Circuit, citing *Rounds*, explained the Telford-Tyler limitation was consistent with a GED Reasoning Level 1, whereas the Moran limitation was consistent with GED Reasoning Level 2 or less. *Id*.; *accord Noori v. Berryhill*, 2018 WL 4676923, at *2 (C.D. Cal. Sept. 26, 2018) (citing *Little*, 708 Fed. App'x 468). Other District Courts have concluded similarly. *E.g.*, *Williams v. Colvin*, 2016 WL 781907, at *3 (D. Or. Feb. 29, 2016) (holding a limitation to "simple, routine, repetitive tasks with one-to-two step instructions" is inconsistent with the

requirements of a Level 2 Job).

In another unpublished case—*Flores v. Berryhill*—the Ninth Circuit stated that, "[b]ecause the ALJ specifically gave 'substantial weight' to Dr. Balson's opinion [Plaintiff could follow one-or-two step instructions], the ALJ was required either (1) to include that limitation in Flores's Residual Functional Capacity [], or (2) to explain why he did not." 725 Fed. App'x. 575, 576 (9th Cir. 2018) (unpublished) (citing *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006)). The Court continued, "The result of this error was that the occupations cited by the vocational expert ("VE") and accepted by the ALJ did not fit within the MRFC limitation described by Dr. Balson." *Id*. Such is the case here.

The Court recognizes it is the ALJ's province to select an RFC properly supported by the record, but when that RFC creates a conflict in the vocational evidence that is unresolved, it is incumbent upon the ALJ to seek an explanation of the conflict from the VE and resolve it. Social Security Ruling 00-4p, 2000 WL 1898704; *Massachi v. Astrue*, 486 F.3d 1149, 1153 (9th Cir. 2007). Here, the ALJ assigned "partial weight" to Dr. Zuess's opinion. (AR. at 29.) The ALJ accorded "great weight" to his opinion Plaintiff would be restricted to simple work but, as explained above, Dr. Zuess assigned more restrictive limitations. (AR. at 29.) Had the ALJ intended to adopt the limitation of "one-to-two step tasks" that Dr. Zuess assigned, Plaintiff could not perform Level 2 jobs. *E.g.*, *Rounds*, 807 F.3d at 1003–1004. If the ALJ intended to limit Plaintiff more broadly to "simple work," as he did in the decision, it seems Plaintiff could perform those jobs. *E.g.*, *Zavalin*, 778 F.3d at 847. Here, unfortunately, the Court cannot discern whether the ALJ conflated the two,[8] or whether the ALJ specifically rejected Dr. Zuess's assigned limitation to one-to-two step tasks. (AR. at 29.) In the latter event, the ALJ offered no substantive reason whatsoever for rejecting the limitation of one-to-two step instructions. (AR. at 29.) Consequently, the Court agrees with Plaintiff and finds there is a conflict in the vocational

---

[8] The Court recognizes the ALJ confirmed with the VE on the record that none of the jobs she identified had GED Reasoning Levels greater than 2, but neither the ALJ nor Plaintiff's counsel inquired of the VE whether an individual capable of performing only one-to-two step tasks could perform Level 2 Jobs. (AR. at 65.)

- 18 -

evidence that is unresolved. The Court will remand for further proceedings.

### III.   CONCLUSION

The Court finds the ALJ provided appropriate reasons for discounting the opinion of Dr. Nguyen, but remands for evaluation of the vocational conflict identified above, and for the opportunity to inquire of the work-preclusive nature of Dr. Latus's opinion. Considering the overall record, the Court also entertains serious doubts regarding the ultimate issue of disability, and additional proceedings will serve useful purposes, such as providing the opportunity for both parties to elicit further VE testimony on available jobs, considering the limitations assigned by Drs. Zuess and Latus. *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099–1102 (9th Cir. 2014) (stating that remand for payment of benefits is appropriate when the record is fully developed and "further administrative proceedings would serve no useful purpose"). Accordingly,

**IT IS THEREFORE ORDERED** reversing the October 8, 2019 decision of the Administrative Law Judge (AR. at 21–37).

**IT IS FURTHER ORDERED** remanding this case to the Social Security Administration for additional proceedings consistent with this opinion.

**IT IS FURTHER ORDERED** directing the Clerk to enter final judgment consistent with this Order and close this case.

Dated this 6th day of December, 2021.

*Michael T. Liburdi*
Michael T. Liburdi
United States District Judge